UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ) <br> BRADLEY A. STEPHENS, *Relator*, ) <br> ) <br>       **Plaintiffs,** ) <br> ) <br>       v. ) <br> ) <br> CONRADO CASTOR, M.D., ) <br> AMERICAN HOME HEALTH ) <br> SERVICES, INC., AUREA DUNCAN, ) <br> AND JACOB CASTOR, ) <br> ) <br>       **Defendants.** ) <br> _____) | Case No. 2:13CV145 |

**COMPLAINT IN INTERVENTION AND JURY DEMAND
OF PLAINTIFF UNITED STATES OF AMERICA**

**INTRODUCTION**

1. Plaintiff United States of America brings this action to recover statutory damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-33, and to recover damages and other monetary relief under the common law or equitable theories of fraud, unjust enrichment, and payment by mistake of fact.

2. From May 20, 2008 through January 25, 2014, immediate family members of defendant Conrado Castor, M.D. (Dr. Castor) owned three home health agencies: defendant American Home Health Care Services, Inc. (American), Adarna Home Health Care Services, Inc. (Adarna), and Amore Home Health Care Services, Inc. (Amore).

3. From May 20, 2008 through January 25, 2014, defendant Dr. Castor violated the False Claims Act by knowingly signing plans of care for, and otherwise referring numerous patients for home health care services to defendant American, Adarna, and Amore, which

were owned by his immediate family members, including two siblings and two spouses of siblings, in violation of the Stark Law, 42 U.S.C. §§ 1395nn.  Defendant American, and its owners defendants Aurea Duncan and Jacob Castor, who are siblings of defendant Dr. Castor, and Adarna and Amore, which also were owned by defendant Dr. Castor's immediate family members, then violated the False Claims Act by submitting, or causing to be submitted, claims for payment to the Medicare Program (Medicare), Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1, for services provided to home health patients referred by defendant Dr. Castor, and receiving payment for those claims from Medicare, in violation of the Stark Law.  From May 20, 2008 through January 25, 2014, Medicare paid approximately 472 claims totaling approximately $1,254,489.41 to defendant American, Adarna, and Amore, three home health agencies owned by defendant Dr. Castor's immediate family members, for home health services referred by defendant Dr. Castor to those home health agencies in violation of the Stark Law.

## JURISDICTION AND VENUE

4. This court has jurisdiction over this action under 31 U.S.C. §§ 3730(a) and 3732(a) and 28 U.S.C. §§ 1345 and 1367(a).

5. Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b) and (c) because defendants can be found in, are authorized to transact business in, and are transacting business in the Northern District of Indiana, and because defendants committed acts within this District that violated 31 U.S.C. § 3729.

## PARTIES

6. Plaintiff United States of America (United States), acting through the United States Department of Health and Human Services (HHS) and the Centers for Medicare and Medicaid Services (CMS), which administers the Health Insurance Program for the Aged and Disabled established by Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 §§ 1395-1395kkk-1 (Medicare).

7. Relator, Bradley Stephens, is an individual residing in Lake County, Indiana.

8. Pursuant to 31 U.S.C. § 3730(b)(1), Mr. Stephens brought this action against defendants Conrado Castor, M.D., American Home Health Services, Incorporated, and Aurea Duncan on behalf of the United States.

9. Defendant Conrado Castor, M.D. (Dr. Castor) resides in Schererville, Indiana in Lake County in the Northern District of Indiana. During the time period relevant to the allegations in this Complaint, defendant Dr. Castor was a physician in Lake County, Indiana who was engaged in business as a Medicare provider of physician services.

10. Defendant American Home Health Services, Inc. (American) was engaged in business as a Medicare provider of home health services in Lake County, Indiana from May 20, 2008 through January 18, 2014.

11. Defendant Aurea Duncan (Duncan) resides in Crown Point, Indiana in Lake County in the Northern District of Indiana. Defendant Duncan incorporated American on February 10, 2005 and has been American's President since that time. Defendant Duncan was a 50% shareholder of American from its inception until August 2008, at which time she became the 100% shareholder of American. Defendant Duncan is the sister of defendant Dr. Castor.

3

12. Defendant Jacob Castor resides in Munster, Indiana in Lake County in the Northern District of Indiana. Defendant Jacob Castor owned approximately 25% of American from May 2008 until August 2008. Defendant Jacob Castor is the brother of defendant Dr. Castor.

## THE LAW

### The False Claims Act

13. The False Claims Act (FCA) provides for the award of treble damages and civil penalties for, *inter alia*, knowingly presenting or causing to be presented false or fraudulent claims for payment to the United States government and for knowingly making or using false records or statements material to false or fraudulent claims paid by the United States. 31 U.S.C. §§ 3729(a)(1), (2); 31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B) (as amended).[1]

14. The FCA provides, in pertinent part, that a person who:

(a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . .

(a)(1)(C) conspires to commit a violation of subparagraph (A), (B) … or (G); [or]

(a)(1)(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government for a civil penalty of not less than $5,500 and not more than $11,000,

---

[1] The FCA was amended pursuant to Public Law 111-21, the Fraud Enforcement and Recovery Act of 2009 (FERA), enacted May 20, 2009. Given the nature of the claims at issue, sections 3279(a)(1) and 3279(a)(7) of the prior statute, and section 3729(a)(1)(A) and 3729(a)(1)(G) of the revised statute are all applicable here. Sections 3729(a)(1) and 3729(a)(7) apply to conduct that occurred before FERA was enacted, and sections 3729(a)(1)(A) and 3729(a)(1)(G) apply to conduct after FERA was enacted. Pursuant to section 4(f) of FERA, section 3729(a)(1)(B) is applicable to all claims in this case pending on or after June 7, 2008.

> as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains. . .
>
> 31 U.S.C. § 3729.
>
> For purposes of the False Claims Act,
>
> > (1) the terms "knowing" and "knowingly"—
>
> > (A) mean that a person, with respect to information—
>
> > > (i) has actual knowledge of the information;
> > > (ii) acts in deliberate ignorance of the truth or falsity of the information; or
> > > (iii) acts in reckless disregard of the truth or falsity of the information; and
>
> > (B) require no proof of specific intent to defraud[.]
>
> 31 U.S.C. § 3729(b)(1).

15. The standard of proof under the FCA is preponderance of the evidence. 31 U.S.C. § 3731(d).

## The Stark Law

16. The physician self-referral law, 42 U.S.C. § 1395nn (commonly known as the Stark Law) prohibits a physician from referring a Medicare beneficiary for "designated health services" (DHS), as defined in 42 U.S.C. § 1395nn(h)(6) and 42 C.F.R. § 411.351, including home health services, to an entity with which the physician (or an immediate family member of the physician) as defined in 42 C.F.R. 411.351, has a financial relationship, as defined in 42 C.F.R. § 411.354, that does not satisfy the requirements of an applicable statutory or regulatory exception to the law. The Stark Law also prohibits the entity from submitting claims to Medicare for such improperly referred DHS. The statute specifically was designed to prevent losses to the Medicare program due to overutilization of DHS, increased costs, and corruption of medical judgment.

5

17. The Stark Law, at 42 U.S.C. § 1395nn(a)(1), provides that:

    (a) Prohibition of certain referrals

    (1) In general

    Except as provided in subsection (b), if a physician (or an immediate family member of such physician) has a financial relationship with an entity specified in paragraph (2), then--

    (A) the physician may not make a referral to the entity for the furnishing of designated health services for which payment otherwise may be made under this subchapter, and

    (B) the entity may not present or cause to be presented a claim under this subchapter or bill to any individual, third party payor, or other entity for designated health services furnished pursuant to a referral prohibited under subparagraph (A).

18. A "financial relationship" of a physician (or an immediate family member of such physician) with an entity includes "an ownership or investment interest in the entity." 42 U.S.C. § 1395nn(a)(2).

19. The term "immediate family member" includes siblings and spouses of siblings. *See* 42 C.F.R. § 411.351.

20. In 1993, the Stark Law was extended to referrals for additional DHS, including home health services. *See* 42 U.S.C. § 1395nn(h)(6)(I). *See also* Omnibus Reconciliation Act of 1993, P.L. 103-66, § 13562, Social Security Act Amendments of 1994, P.L. 103-432, § 152.

21. Compliance with the Stark Law is a condition of payment by the Medicare program. The Stark Law prohibits Medicare from paying any claims for DHS referred in violation of the statute. *See* 42 U.S.C. § 1395nn (g)(1).

22. The regulations implementing 42 U.S.C. § 1395nn expressly require that any entity collecting payment for a DHS "performed pursuant to a prohibited referral must refund all collected amounts on a timely basis." 42 C.F.R. § 411.353(d).

23. A knowing violation of the Stark Law also may subject the billing entity to exclusion from participation in federal health care programs and civil monetary penalties. 42 U.S.C. §§ 1395nn(g)(3), 1320a-7a(a).

## The Medicare Program

24. In 1965, Congress enacted Title XVIII of the Social Security Act, known as the Medicare Program, to pay for the costs of certain healthcare services.  Entitlement to Medicare is based on age, disability, or affliction with end-stage renal disease.  *See* 42 U.S.C. § 1395(c).  Part A of the Medicare Program authorizes payment for home health care. *See* 42 U.S.C. § 1395d(a)(3).

25. HHS is responsible for the administration of the Medicare Program, which is accomplished through CMS.

26. At all times relevant to this complaint, CMS contracted with private contractors referred to as "fiscal intermediaries," "carriers," and Medicare Administrative Contractors (MACs), to act as agents in reviewing and paying claims submitted by healthcare providers.  42 U.S.C. § 1395h; 42 C.F.R. §§ 421.3, 421.100.

27. To participate in the Medicare program as a new enrollee, physicians and non-physician practitioners must submit a Medicare Enrollment Application, CMS Form-855I. Physicians also submit Form-855I if they are reactivating or revalidating Medicare enrollment or changing certain enrollment information.

28. Medicare regulations require providers and suppliers to certify that they meet, and will continue to meet, the requirements of the Medicare statute and regulations. 42 C.F.R. § 424.516(a)(1).

      When a physician signs the certification statement contained in Form CMS-855I, he or she attests as follows:

> I agree to abide by the Medicare laws, regulations and program instructions . . . . I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the supplier's compliance with all applicable conditions of participation in Medicare.

29. The National Provider Identifier (NPI) is a standard and unique health identifier for health care providers. All providers and practitioners must have an assigned NPI number prior to enrolling in Medicare.

30. To obtain Medicare reimbursement for certain outpatient items or services, providers submit claims using forms known as CMS 1500s. Among the information the provider includes on a CMS 1500 form are certain five-digit codes, known as Current Procedural Terminology Codes, or CPT codes, that identify the services rendered and for which reimbursement is sought, and the unique billing identification number of the "rendering provider" and the "referring provider or other source."

31. Defendants Dr. Castor and American are authorized by the Medicare program to provide medical services to Medicare beneficiaries, bill Medicare for legitimate, covered services and collect allowable payments for the services provided.

### Specific Requirements for Home Health Services

32. Medicare will not pay for home health services unless a physician certifies or recertifies that (1) the patient is confined to the home; (2) the patient needs intermittent skilled nursing care, physical therapy, speech therapy, or occupational therapy; (3) a plan of care for the patient was established and is periodically reviewed by the physician; and (4) the home health services were furnished while the individual was under the care of the

8

physician. Further, before a home health agency may submit to Medicare claims for payment for home health services, the attending physician must sign and date the plan of care. Rubber signature stamps are not acceptable. 42 C.F.R. § 424.22; Medicare Manual 30.1, Rev. 68.

33. If a physician or his immediate family member has a financial relationship with a home health agency (as defined in 42 C.F.R. § 411.354), the Stark Law prohibits the physician from (1) certifying or recertifying a need for home health services; or (2) establishing or reviewing a plan of care with the home health agency, unless the financial relationship of the physician or his immediate family member satisfies the requirements of an applicable exception in 42 C.F.R. §§ 411.355-57.

34. Defendant American, Adarna Home Health Care Services, Inc. (Adarna), and Amore Home Health Care Services, Inc. (Amore) were owned by defendant Dr. Castor's immediate family members. Adarna, and Amore are located in a Metropolitan Statistical Area (as defined in 42 C.F.R. § 412.62(f)(1)(ii)), and therefore are not located in a rural area as defined at 42 C.F.R. § 411.351. Therefore, the financial relationship between defendant Dr. Castor's immediate family members with defendant American, Adarna, and Amore did not satisfy the requirements of any applicable exception, because no exception was available to them, including the rural provider exception at 42 C.F.R. § 411.356(c). Therefore, defendant Dr. Castor's referrals to his immediate family members who owned defendant American, Adarna, and Amore were prohibited under the Stark Law and 42 C.F.R. § 424.22.

## DEFENDANTS' SCHEME

35. From May 20, 2008 through January 25, 2014, defendant Dr. Castor knowingly signed plans of care for, and otherwise referred numerous Medicare patients for the purpose of receiving home health care services to three home health agencies owned by his immediate family members in violation of the Stark Law.

36. During the relevant time period, defendant American, Adarna, and Amore were owned by defendant Dr. Castor's immediate family members.

37. During the relevant time period, defendant American, Adarna, and Amore knowingly billed Medicare for home health services in violation of the Stark Law for patients referred by defendant Dr. Castor.

38. Attached as Exhibits 1A through 1E and here incorporated by reference as if set out in full, is a list of claims paid by Medicare for defendant Dr. Castor's home health care referrals to agencies owned by his immediate family members for home health care services provided from May 20, 2008 through January 25, 2014.

39. During the relevant time period, Medicare paid approximately 472 claims totaling approximately $1,254,489.41 to defendant American, Adarna, and Amore for defendant Dr. Castor's home health care referrals.

### American Home Health Services

40. Defendant American was incorporated in February 2005 and is engaged in business as a Medicare provider of home health services in Lake County, Indiana.

41. Defendant Duncan has been American's President since it was incorporated. Defendant Duncan was a 50% shareholder of American from its inception until August 2008, when she became the 100% shareholder of American.

10

42. Defendant Duncan is the sister of defendant Dr. Castor.

43. Defendant Dr. Castor knowingly referred his patients to American to receive home health services in violation of the Stark Law and 42 C.F.R. § 424.22.

44. From May 20, 2018 through January 18, 2014, defendant American knowingly submitted claims to Medicare for home health services for patients referred by defendant Dr. Castor in violation of the Stark Law and 42 C.F.R. § 424.22.

45. From May 20, 2018 through January 18, 2014, defendant Duncan caused to be submitted to Medicare claims from defendant American for home health services for patients referred by defendant Dr. Castor in violation of the Stark Law and 42 C.F.R. § 424.22.

46. Attached as Exhibit 1B and here incorporated by reference as if set out in full, is a list of claims paid by Medicare to American for defendant Dr. Castor's home health care referrals for the period from May 20, 2008 through January 18, 2014 (with patient names and other identifying information redacted pursuant to Fed. R. Civ. P. 5.2).

47. During the relevant time period, Medicare paid approximately 318 claims totaling approximately $862,709.81 to American for defendant Dr. Castor's home health care referrals.

48. Defendant Jacob Castor owned approximately 25% of American from May 2008 until August 2008.

49. Defendant Jacob Castor is the brother of defendant Dr. Castor.

50. From May 20, 2008 through August 21, 2008, during the relevant time period of his ownership interest in defendant American, defendant Jacob Castor knowingly caused to be submitted to Medicare claims from defendant American for home health services for

11

patients referred by defendant Dr. Castor in violation of the Stark Law and 42 C.F.R. § 424.22.

51. Attached as Exhibit 1C and here incorporated by reference as if set out in full, is a list of claims paid by Medicare to American for defendant Dr. Castor's home health care referrals during the period of defendant Jacob Castor's ownership interest in American from May 20, 2008 through August 21, 2008 (with patient names and other identifying information redacted pursuant to Fed. R. Civ. P. 5.2).

52. From May 20, 2008 through August 21, 2008, during the relevant time period of defendant Jacob Castor's ownership interest in American, Medicare paid approximately 17 claims totaling approximately $41,494.52 to American for defendant Dr. Castor's home health care referrals.

### Adarna Home Health Care Services

53. Adarna was incorporated in March 2004 and was engaged in business as a Medicare provider of home health services in Lake County, Indiana from at least July 22, 2008 through at least January 13, 2014.

54. From at least July 22, 2008 through at least January 13, 2014, Maria Cynthia Castor was Adarna's Chief Executive Officer and Owner.

55. Maria Cynthia Castor is the sister-in-law of defendant Dr. Castor and the wife of Zosimo Castor, one of defendant Dr. Castor's brothers.

56. Defendant Dr. Castor knowingly referred his patients to Adarna in violation of the Stark Law to receive home health services.

57. Adarna and Maria Cynthia Castor submitted claims to Medicare in violation of the Stark Law for home health services for patients referred by defendant Dr. Castor, from at least

July 22, 2008 through at least January 13, 2014, in violation of the Stark Law and 42 C.F.R. § 424.22.

58. Attached as Exhibit 1D and here incorporated by reference as if set out in full, is a list of claims paid by Medicare to Adarna for defendant Dr. Castor's home health care referrals for the period from July 22, 2008 through January 13, 2014 (with patient names and other identifying information redacted pursuant to Fed. R. Civ. P. 5.2).

59. From July 22, 2008 through January 13, 2014, Medicare paid approximately 82 claims totaling approximately $211,308.46 to Adarna for defendant Dr. Castor's home health care referrals.

## Amore Home Health Care Services, Inc.

60. Amore was engaged in business as a Medicare provider of home health services in Lake County, Indiana from March 14, 2011 through December 31, 2013.

61. From March 14, 2011 through December 31, 2013, Debbie J. Castor was the President and sole shareholder of Amore until she sold the business on December 31, 2013.

62. From March 14, 2011 through December 31, 2013, Debbie J. Castor was the sister-in-law of defendant Dr. Castor and the wife of Johnny Castor, one of defendant Dr. Castor's brothers.

63. Defendant Dr. Castor knowingly referred his patients to Amore to receive home health services in violation of the Stark Law and 42 C.F.R. § 424.22.

64. Amore and Debbie J. Castor submitted claims to Medicare for home health services for patients referred by defendant Dr. Castor in violation of the Stark Law and 42 C.F.R. § 424.22.

65. Attached as Exhibit 1E and here incorporated by reference as if set out in full, is a list of claims paid by Medicare to Amore for defendant Dr. Castor's home health care referrals for the period from March 14, 2011 through January 25, 2014 (with patient names and other identifying information redacted pursuant to Fed. R. Civ. P. 5.2).

66. From March 14, 2011 through January 25, 2014, Medicare paid approximately 72 claims totaling approximately $180,471.14 to Amore for defendant Dr. Castor's home health care referrals.

### VIOLATIONS OF LAW

### COUNT 1

### False Claims Act: Presentation of False Claims
### (31 U.S.C. § 3729(a)(1)(A))

67. Plaintiff United States realleges paragraphs 1 through 66 above as if fully set forth.

68. Defendant Dr. Castor, knowingly presented, or caused to be presented, approximately 472 false or fraudulent claims to Medicare for defendant Dr. Castor's home health care referrals to defendant American, Adarna, and Amore.

69. Defendant American, knowingly presented, or caused to be presented, approximately 318 false or fraudulent claims to Medicare for defendant Dr. Castor's home health care referrals to American.

70. Defendant Duncan, knowingly presented, or caused to be presented, approximately 318 false or fraudulent claims to Medicare from defendant American for defendant Dr. Castor's home health care referrals to American.

71. Defendant Jacob Castor, knowingly presented, or caused to be presented, approximately 17 false or fraudulent claims to Medicare from defendant American for defendant Dr. Castor's home health care referrals to American.

72. The false or fraudulent information in each claim was material to Medicare's decision to pay the false claims that defendant American, defendant Duncan, defendant Jacob Castor, Adarna, and Amore submitted to Medicare.

73. Defendants Dr. Castor, American, Duncan, and Jacob Castor presented the false or fraudulent claims to Medicare, or caused the false or fraudulent claims to be presented to Medicare, with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

74. Plaintiff United States sustained a loss from the false or fraudulent claims defendant American, defendant Duncan, defendant Jacob Castor, Adarna, and Amore submitted to Medicare.

75. Defendants Dr. Castor, American, Duncan, and Jacob Castor are liable to plaintiff United States under the FCA, jointly and severally, for three times the loss sustained by plaintiff United States plus a civil penalty of not less than $5,500 and not more than $11,000 per false claim and the costs of this civil action brought to recover such penalty and damages. 31 U.S.C. § 3729(a)(1), (3).  Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note; Public Law 101-410; 64 Fed. Reg. 47,099, 47,103 (1999).

## COUNT 2

### False Claims Act: False Statements Material to False Claims
### (31 U.S.C. § 3729(a)(1)(B))

76. Plaintiff United States realleges paragraphs 1 through 75 above as if fully set forth.

77. Defendant Dr. Castor knowingly made, used, or caused to be made or used, false or fraudulent records or statements, including claims for payment or approval submitted to Medicare (identified in paragraphs 31-62 above) for DHS rendered to patients by an

15

entity owned by the referring physician's immediate family members in violation of the Stark Law.

78. Defendant American knowingly made, used, or caused to be made or used, false or fraudulent records or statements, including claims for payment or approval submitted to the United States (identified in paragraphs 31-48 above) for DHS rendered to patients by an entity owned by the referring physician's immediate family members in violation of the Stark Law.

79. Defendant Duncan knowingly made, used, or caused to be made or used, false or fraudulent records or statements, including claims for payment or approval submitted to the United States (identified in paragraphs 31-48 above) for DHS rendered to patients by an entity owned by the referring physician's immediate family members in violation of the Stark Law.

80. Defendant Jacob Castor knowingly made, used, or caused to be made or used, false or fraudulent records or statements, including claims for payment or approval submitted to the United States (identified in paragraphs 31-48 above) for DHS rendered to patients by an entity owned by the referring physician's immediate family members in violation of the Stark Law.

81. The false or fraudulent records or statements that defendants Dr. Castor, American, Duncan, and Jacob Castor made, used, or caused to be made or used were material to the decisions of Medicare to pay the false claims that those defendants submitted, or caused to be submitted, to Medicare.

82. Defendants Dr. Castor, American, Duncan, and Jacob Castor made, used, or caused to be made or used, the false or fraudulent records or statements with actual knowledge of their

falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

83. Plaintiff United States sustained a loss from the false or fraudulent claims to Medicare that defendants Dr. Castor, American, Duncan, and Jacob Castor caused to be submitted using false or fraudulent records or statements that defendants Dr. Castor, American, Duncan, and Jacob Castor made, used, or caused to be made or used.

84. Defendants Dr. Castor, American, Duncan, and Jacob Castor are liable to the United States under the FCA, jointly and severally, for three times the loss sustained by the United States plus a civil penalty of not less than $5,500 and not more than $11,000 per false claim and the costs of this civil action brought to recover such penalty and damages. 31 U.S.C. § 3729(a)(1), (3).  Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note; Public Law 101-410; 64 Fed. Reg. 47,099, 47,103 (1999).

## COUNT 3 (Defendants American, Duncan, and Jacob Castor)
### Payment by Mistake

85. Plaintiff United States realleges paragraphs 1 through 84 above as if fully set forth.

86. This is a claim for the recovery of monies paid by Medicare to defendants American, Duncan, and Jacob Castor because of mistaken understandings of fact.

87. Defendants American, Duncan, and Jacob Castor were not entitled to receive payment from the United States for DHS furnished by an entity that had a "financial relationship" with the referring physician or an "immediate family member" of such physician as prohibited by the Stark Law.

88. The United States paid defendants American, Duncan, and Jacob Castor for claims for DHS, specifically home health services, furnished by an entity that had a "financial relationship" with an "immediate family member" of the referring physician without

knowledge of material facts, and under the mistaken belief that defendants American, Duncan, and Jacob Castor were entitled to receive payment for such claims.

89. The United States' mistaken belief was material to its decision to pay claims for home health services submitted, or caused to be submitted, by defendants American, Duncan, and Jacob Castor.

90. Plaintiff United States suffered losses as a result of the Medicare payments to defendants American, Duncan, and Jacob Castor based on a mistake of fact.

91. Defendants American, Duncan, and Jacob Castor are liable to account and pay to plaintiff United States the payments that Medicare made in error to defendants American, Duncan, and Jacob Castor.

## COUNT 4 (Defendants American, Duncan, and Jacob Castor)

### Unjust Enrichment

92. Plaintiff United States realleges paragraphs 1 through 91 above as if fully set forth.

93. This is a claim by plaintiff United States for recovery of monies by which defendants American, Duncan, and Jacob Castor were unjustly enriched.

94. By obtaining Medicare funds, directly or indirectly, to which they were not entitled, defendants American, Duncan, and Jacob Castor were unjustly enriched.

95. Plaintiff United States suffered losses because of the unjust enrichment of defendants American, Duncan, and Jacob Castor.

96. Defendants American, Duncan, and Jacob Castor are liable to account and pay to plaintiff United States the amounts defendants American, Duncan, and Jacob Castor received from Medicare to which they were not entitled.

**REQUEST FOR RELIEF**

WHEREFORE, plaintiff United States of America requests that this Court enter judgment in its favor against defendants Conrado Castor, M.D., American Home Health Services, Inc., Aurea Duncan, and Jacob Castor, jointly and severally, as follows:

1. For Counts 1 and 2 under the False Claims Act, the amount of plaintiff United States' damages, trebled as required by law, and such civil penalties as are authorized by law.

2. For Counts 3 and 4 for payment by mistake and unjust enrichment, the damages sustained or the amounts by which defendants American, Duncan, and Jacob Castor were paid by mistake or unjustly enriched, or by which defendants American, Duncan, and Jacob Castor retained monies to which they were not entitled, plus pre-judgment interest, attorneys' fees, costs, and expenses.

3. The costs of this action.

4. All additional and other relief that is just and proper.

**JURY DEMAND**

Plaintiff United States of America demands a jury trial on all issues so triable.

                                  Respectfully submitted,

                                  THOMAS L. KIRSCH II
                                  UNITED STATES ATTORNEY

                                  /s/ Wayne T. Ault
                                  WAYNE T. AULT
                                  DIRK D. DE LOR
                                  Assistant United States Attorneys
                                  Northern District of Indiana
                                  5400 Federal Plaza, Suite 1500
                                  Hammond, Indiana  46320
                                  Telephone:  219-937-5500
                                  Telecopy:  219-852-2770
                                  Internet Address:  Wayne.Ault@usdoj.gov

                                  Counsel for Plaintiff United States of America