IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,  *ex. rel.* | ) | |
| BRADLEY A. STEPHENS, *Relator,* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:13CV145 |
| | ) | |
| CONRADO CASTOR, M.D., AMERICAN HOME | ) | |
| HEALTH SERVICES, INC., AUREA DUNCAN, AND | ) | |
| JACOB CASTOR, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CONRADO CASTOR, M.D.'S ANSWER TO PLAINTIFF'S
COMPLAINT AND AFFIRMATIVE DEFENSES**

Defendant, Conrado Castor, M.D. ("Castor"), by counsel, for his Answer to Plaintiff's

Complaint filed herein, states:

1.       Plaintiff United States of America brings this action to recover statutory damages
and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-33, and to recover damages and
other monetary relief under the common law or equitable theories of fraud, unjust enrichment, and
payment by mistake of fact.

**ANSWER:**   Castor admits that Plaintiff's Complaint purports to state claims for
damages and civil penalties under the False Claims Act, fraud, unjust enrichment
and payment by mistake of fact, but denies any liability on those claims.

2.       From May 20,  2008 through January 25, 2014, immediate family members of
defendant Conrado Castor, M.D. (Dr. Castor) owned three home health agencies: defendant
American Home Health Care Services, Inc. (American), Adarna Home Health Care Services, Inc.
(Adarna), and Amore Home Health Care Services, Inc. (Amore).

**ANSWER:**   Castor neither admits nor denies the allegations contained in rhetorical
paragraph 2 because he lacks sufficient knowledge as to their truth or falsity.

1

3.      From May 20, 2008 through January 25, 2014, defendant Dr. Castor violated the False Claims Act by knowingly signing plans of care for, and otherwise referring numerous patients for home health care services to defendant American, Adarna, and Amore, which were owned by immediate family members, including two siblings and two spouses of siblings, in violation of the Stark Law, 42 U.S.C. §§ 1395nn. Defendant American, and its owners defendants Aurea Duncan and Jacob Castor, who are siblings of defendant Dr. Castor, and Adarna and Amore, which also were owned by defendant Dr. Castor's immediate family members, then violated the False Claims Act by submitting, or causing to be submitted, claims for payment to the Medicare Program (Medicare), Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1, for services provided to home health patients referred by defendant Dr. Castor, and receiving payment for those claims from Medicare, in violation of the Stark Law. From May 20, 2008 through January 25, 2014, Medicare paid approximately 472 claims totaling approximately $1,254,489.41 to defendant American, Adarna, and Amore, three home health agencies owned by defendant Dr. Castor's immediate family members, for home health services referred by defendant Dr. Castor to those home health agencies in violation of the Stark Law.

   **ANSWER:**   Castor admits Aurea Duncan and Jacob Castor are his siblings, but denies the remaining allegations contained in rhetorical paragraph 3.

## JURISDICTION AND VENUE

4.      This court has jurisdiction over this action under 31 U.S.C. §§ 3730(a) and 3732(a) and 38 U.S.C. §§ 1345 and 1367(a).

   **ANSWER:**   Without admitting to the allegations contained in the Complaint, Castor admits this Court has jurisdiction over the subject matter of the Complaint.

5.      Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b) and (c) because defendants can be found in, are authorized to transact business in, and are transacting business in the Northern District of Indiana, and because defendants committed acts within this District that violated 31 U.S.C. § 3729.

   **ANSWER:**   Without admitting to the allegations contained in the Complaint, Castor admits that venue is proper in the Northern District of Indiana.

## PARTIES

6.    Plaintiff United States of America (United States), acting through the United States Department of Health and Human Services (HHS) and the Centers for Medicare and Medicaid Services (CMS), which administers the Health Insurance Program for the Aged and Disabled established by Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, §§ 1395-1395kkk-1 (Medicare).

**ANSWER:**    Because no allegations are made against Castor, he does not respond to the allegations in rhetorical paragraph 6. To the extent a response is necessary, Castor denies said allegations.

7.    Realtor, Bradley Stephens, is an individual residing in Lake County, Indiana.

**ANSWER:**    Castor is without knowledge as to the allegations in rhetorical paragraph 7 and therefore denies same.

8.    Pursuant to 31 U.S.C. § 3730(b)(1), Mr. Stephens brought this action against defendants Conrado Castor, M.D., American Home Health Services, Incorporated, and Aurea Duncan on behalf of the United States.

**ANSWER:**    Castor is without knowledge as to the allegations in rhetorical paragraph 8 and therefore denies same.

9.    Defendant Conrado Castor, M,D, (Dr. Castor) resides in Schererville, Indiana in Lake County in the Northern District of Indiana. During the time period relevant to the allegations in this Complaint, defendant Dr. Castor was a physician in Lake County, Indiana who was engaged in business as a Medicare provider of physician services.

**ANSWER:**    Castor admits he resides in Schererville, Indiana and that he was a physician during the time frame relevant to the allegations of the Complaint. Castor admits part of his business involved Medicare, but denies all other allegations.

10.    Defendant American Home Health Services, Inc. (American) was engaged in business as a Medicare provider of home health services in Lake County, Indiana from May 20, 2008 through January 18, 2014.

**ANSWER:**    Castor admits American was a home health provider, but denies all other allegations.

11.     Defendant Aurea Duncan (Duncan) resides in Crown Point, Indiana in Lake County in the Northern District of Indiana. Defendant Duncan incorporated American on February 10, 2005 and has been American's President since that time Defendant Duncan was a 50% shareholder of American from its inception until August 2008, at which time she became the 100% shareholder of American. Defendant Duncan is the sister of defendant Dr. Castor.

> **ANSWER:**   Castor admits Duncan is his sister and that she resides in Crown Point, Indiana, but he is without knowledge as to the remaining allegations and therefore denies same.

12.     Defendant Jacob Castor resides in Munster, Indiana in Lake County in the Northern District of Indiana. Defendant Jacob Castor owned approximately 25% of American from May 2008 until August 2008. Defendant Jacob Castor is the brother of defendant Dr. Castor.

> **ANSWER:**   Castor admits Jacob Castor is his brother and that he resides in Munster, Indiana, but he is without knowledge as to the remaining allegations and therefore denies same.

## THE LAW
## The False Claim Act

13.     The False Claims Act (FCA) provides for the award of treble damages and civil penalties for, *inter alia*, knowingly presenting or causing to be presented false or fraudulent claims for payment to the United States government and for knowingly making or using false records or statements material to false or fraudulent claims paid by the United States, 31 U.S.C. §§ 3729(a)(1), (2); 31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B) (as amended).

> **ANSWER:**   The allegations contained in this rhetorical paragraph of the Complaint contain generalized statements regarding various aspects of the law to which an answer is not required. To the extent an answer is required, Castor denies the allegations.

14.     The FCA provides, in pertinent part, that a person who:

> (a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

4

(a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(a)(1)(C) conspires to commit a violation of subparagraph (A), (B) … or (G), [or]

(a)(1)(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit or property to the statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government for a civil penalty or not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains.. . .

31 U.S.C. § 3729.

For purposes of the False Claims Act,

     (1)     the terms "knowing" and "knowingly" ---

     (A)     means that a person, with respect to information ---

          (i)     has actual knowledge of the information;
          (ii)     acts in deliberate ignorance of the truth or falsity of the information; or
          (iii)     acts in reckless disregard of the truth or falsity of the information; and

     (B)     require no proof of specific intent to defraud[.]

31 U.S.C. § 3729(b)(1).

**ANSWER:**    The allegations contained in this rhetorical paragraph of the Complaint contain generalized statements regarding various aspects of the law to which an answer is not required. To the extent an answer is required Castor denies the allegations.

     15.    The standard of proof under the FCA is preponderance of the evidence. 31 U.S.C. § 3731(d).

**ANSWER:**    The allegations contained in this rhetorical paragraph of the Complaint contain generalized statements regarding various aspects of the law to which an answer is not required. To the extent an answer is required Castor denies the allegations.

**The Stark Law**

16.     The physician self-referral law, 41 U.S.C. § 1395nn (commonly known as the Stark Law) prohibits a physician from referring a Medicare beneficiary for "designated health services" (DHS), as defined in 42 U.S.C. § 1395nn(h)(6) and 42 C.F.R. § 411.351, including home health services, to an entity with which the physician (or an immediate family member of the physician) as defined in 42 C.F.R. 411.351, has a financial relationship, as defined in 42 C.F.R. § 411.354, that does not satisfy the requirements of an applicable statutory or regulatory exception to the law. The Stark Law also prohibits the entity from submitting claims to Medicare for such improperly referred DHS. The statute specifically was designed to prevent losses to the Medicare program due to the overutilization of DHS, increased costs, and corruption of medical judgment.

> **ANSWER:**   The allegations contained in this rhetorical paragraph of the Complaint contain generalized statements regarding various aspects of the law to which an answer is not required. To the extent an answer is required Castor denies the allegations.

17.     The Stark Law, at 42 U.S.C. § 1395nn(a)(1), provides that:

(a)     Prohibition of certain referrals

(1)     In general

Except as provided in subsection (b), if a physician (or an immediate family member of such physician) has a financial relationship with an entity specified in paragraph (2), then - -

(A) the physician may not make a referral to the entity for the furnishing of designated health services for which payment otherwise may be made under this subchapter, and

(B)   the entity may not present or cause to be presented a claim under this subchapter or bill to any individual, third party payor, or other entity for designated health services furnished pursuant to a referral prohibited under subparagraph (A).

> **ANSWER:**   The allegations contained in this rhetorical paragraph of the Complaint contain generalized statements regarding various aspects of the law to which an answer is not required. To the extent an answer is required Castor denies the allegations.

18.     a "financial relationship" of a physician (or an immediate family member of such physician) with an entity includes "an ownership or investment interest in the entity." 42 U.S.C. § 1395nn(a)(2).

> **ANSWER:**   The allegations contained in this rhetorical paragraph of the Complaint contain generalized statements regarding various aspects of the law to which an answer is not required. To the extent an answer is required Castor denies the allegations.

19.     The term "immediate family member" includes siblings and spouses of siblings. *See* 42 C.F.R. § 411.351.

> **ANSWER:**   The allegations contained in this rhetorical paragraph of the Complaint contain generalized statements regarding various aspects of the law to which an answer is not required. To the extent an answer is required Castor denies the allegations.

20.     In 1993, the Stark Law was extended to referrals for additional DHS, including home health services. *See* 42 U.S.C. § 1395nn(h)(6)(1). *See also* Omnibus Reconciliation Act of 1993, P.L. 103-66, § 13562, Social Security Act Amendments of 1994, P.L. 103-432, § 152.

> **ANSWER:**   The allegations contained in this rhetorical paragraph of the Complaint contain generalized statements regarding various aspects of the law to which an answer is not required. To the extent an answer is required Castor denies the allegations.

21.     Compliance with the Stark Law is a condition of payment by the Medicare program. The Stark Law prohibits Medicare from paying any claims for DHS referred in violation of the statute. *See* 42 U.S.C. § 1395nn(g)(1).

> **ANSWER:**   The allegations contained in this rhetorical paragraph of the Complaint contain generalized statements regarding various aspects of the law to which an answer is not required. To the extent an answer is required Castor denies the allegations.

22.     The regulations implementing 42 U.S.C. § 1395nn expressly require that any entity collecting payment for a DHS "performed pursuant to a prohibited referral must refund all collected amounts on a timely basis."  42 C.F.R. § 411.353(d).

**ANSWER:**   The allegations contained in this rhetorical paragraph of the Complaint contain generalized statements regarding various aspects of the law to which an answer is not required. To the extent an answer is required Castor denies the allegations.

23.     A knowing violation of the Stark Law also may subject the billing entity to exclusion from participation in federal health care programs and civil monetary penalties. 42 U.S.C. §§ 1395nn(g)(3), 1320a-7a(a).

**ANSWER:**   The allegations contained in this rhetorical paragraph of the Complaint contain generalized statements regarding various aspects of the law to which an answer is not required. To the extent an answer is required Castor denies the allegations.

## The Medicare Program

24.     In 1965, Congress enacted Title XVIII of the Social Security Act, known as the Medicare Program, to pay for the costs of certain healthcare services. Entitlement to Medicare is based on age, disability, or affliction with end-stage renal disease. *See* 42 U.S.C. § 1395(c). Part A of the Medicare Program authorizes payment for home health care. *See* 42 U.S.C. § 1395d(a)(3),

**ANSWER:** The allegations contained in this rhetorical paragraph of the Complaint contain generalized statements regarding various aspects of the law to which an answer is not required. To the extent an answer is required Castor denies the allegations.

25.     HHS is responsible for the administration of the Medicare Program, which is accomplished through CMS.

**ANSWER:**   The allegations contained in this rhetorical paragraph of the Complaint contain generalized statements regarding various aspects of the law to which an answer is not required. To the extent an answer is required Castor denies the allegations.

26.     At all times relevant to this complaint, CMS contracted with private contractors referred to as "fiscal intermediaries," "carriers," and Medicare Administrative Contractors (MACs), to act as agents in reviewing and paying claims submitted by healthcare providers. 42 U.S.C. § 1395h; 42 C.F.R. §§ 421.3, 421.100.

**ANSWER:**   The allegations contained in this rhetorical paragraph of the Complaint contain generalized statements regarding various aspects of the law to which an answer is not required. To the extent an answer is required Castor denies the allegations.

27.     To participate in the Medicare program as a new enrollee, physicians and non-physician practitioners must submit a Medicare Enrollment Application, CMS Form-8551. Physicians also submit Form-8551 if they are reactivating or revalidating Medicare enrollment or changing certain enrollment information.

> **ANSWER:**   The allegations contained in this rhetorical paragraph of the Complaint contain generalized statements regarding various aspects of the law to which an answer is not required. To the extent an answer is required Castor denies the allegations.

28.     Medicare regulations require providers and suppliers to certify that they meet, and will continue to meet, the requirements of the Medicare statute and regulations. 42 C.F.R. § 424.516(a)(1).

When a physician signs the certification statement contained in Form CMS-8551, he or she attests as follows:

> I agree to abide by the Medicare laws, regulations and program instructions . . . I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the supplier's compliance with all applicable conditions of participation in Medicare.

> **ANSWER:**   The allegations contained in this rhetorical paragraph of the Complaint contain generalized statements regarding various aspects of the law to which an answer is not required. To the extent an answer is required Castor denies the allegations.

29.     The National Provider Identifier (NPI) is a standard and unique health identifier for health care providers, All providers and practitioners must have an assigned NPI number prior to enrolling in Medicare.

> **ANSWER:**   The allegations contained in this rhetorical paragraph of the Complaint contain generalized statements regarding various aspects of the law to which an answer is not required. To the extent an answer is required Castor denies the allegations.

30.     To obtain Medicare reimbursement for certain outpatient items or services, providers submit claims using forms known as CMS 1500s. Among the information the provider includes on a CMS 1500 form are certain five-digit codes, known as Current Procedural Terminology Codes, or CPT codes, that identify the services rendered and for which

reimbursement is sought, and the unique billing identification number of the "rendering provider" and the "referring provider or other source."

> **ANSWER:** The allegations contained in this rhetorical paragraph of the Complaint contain generalized statements regarding various aspects of the law to which an answer is not required. To the extent an answer is required Castor denies the allegations.

31.     Defendants Dr. Castor and American are authorized by the Medicare program to provide medical services to Medicare beneficiaries, bill Medicare for legitimate, covered services and collect allowable payments for the services provided.

> **ANSWER:** Castor admits the allegations contained in rhetorical paragraph 31 as to himself, but he is without knowledge as to the other defendants and therefore denies any allegation related to those defendants.

## Specific Requirements for Home Health Services

32.     Medicare will not pay for home health services unless a physician certifies or recertifies  that (1) the patient is confined to the home; (2) the patient needs intermittent skilled nursing care, physical therapy, speech therapy, or occupational therapy; (3) a plan of care for the patient was established and is periodically reviewed by the physician; and (4) the home health services were furnished while the individual was under the care of the physician. Further, before a home health agency may submit to Medicare claims for payment for home health services, the attending physician must sign and date the plan of care. Rubber signature stamps are not acceptable. 42 C.F.R. § 424.22; Medicare Manual 30.1, Rev. 68.

> **ANSWER:** The allegations contained in this rhetorical paragraph of the Complaint contain generalized statements regarding various aspects of the law to which an answer is not required. To the extent an answer is required Castor denies the allegations.

33.     If a physician or his immediate family member has a financial relationship with a home health agency (as defined in 42 C.F.R. § 411.354), the Stark Law prohibits the physician from (1) certifying or recertifying a need for home health services; or (2) establishing or reviewing a plan of care with the home health agency, unless the financial relationship of the physician or his immediate family member satisfies the requirements of an applicable exception in 42 C.F.R. §§ 411.355-57.

**ANSWER:**   The allegations contained in this rhetorical paragraph of the Complaint contain generalized statements regarding various aspects of the law to which an answer is not required. To the extent an answer is required Castor denies the allegations.

34.     Defendant American, Adarna Home Health Care Services, Inc. (Adarna), and Amore Home Health Care Services, Inc. (Amore) were owned by defendant Dr. Castor's immediate family members. Adarna, and Amore are located in a Metropolitan Statistical Area (as defined in 42 C.F.R. § 412.62(f)(1)(ii), and therefore are not located in a rural area as defined at 42 C.F.R. § 411.351. Therefore, the financial relationship between defendant Dr. Castor's immediate family members with defendant America, Adarna, and Amore did not satisfy the requirements of any applicable exception, because no exception was available to them, including the rural provider exception at 42 C.F.R. § 411.356(c). Therefore, defendant Dr. Castor's referrals to his immediate family members who owned defendant American, Adarna, and Amore were prohibited under the Stark Law and 42 C.F.R. § 424.22.

**ANSWER:**   Castor denies the allegations in rhetorical paragraph 34.

### DEFENDANTS' SCHEME

35.     From May 20, 2008 through January 25, 2014, defendant Dr. Castor knowingly signed plans of care for, and otherwise referred numerous Medicare patients for the purpose of receiving home health care services to three home health agencies owned by his immediate family members in violation of the Stark Law.

**ANSWER:**   Castor denies the allegations in rhetorical paragraph 35.

36.     During the relevant time period, defendant American, Adarna, and Amore were owned by defendant Dr. Castor's immediate family members.

**ANSWER:**   Castor is without knowledge as to the allegations in rhetorical paragraph 36 and therefore denies same.

37.     During the relevant time period, defendant American, Adarna, and Amore knowingly billed Medicare for home health services in violation of the Stark Law for patients referred by defendant Dr. Castor.

**ANSWER:**   Castor denies the allegations in rhetorical paragraph 37.

11

38.     Attached as Exhibits 1A through 1E and here incorporated by reference as if set out in full, is a list of claims paid by Medicare for defendant Dr. Castor's home health care referrals to agencies owned by his immediate family members for home health care services provided from May 20, 2008 through January 25, 2014.

**ANSWER:**     Castor is without knowledge as to the allegations in rhetorical paragraph 38 and therefore denies same.

39.     During the relevant time period, Medicare paid approximately 472 claims totaling approximately $1,254,489.41 to defendant American, Adarna, and Amore for defendant Dr. Castor's home health care referrals.

**ANSWER:**     Castor is without knowledge as to the allegations in rhetorical paragraph 39 and therefore denies same.

**America Home Health Services**

40.     Defendant American was incorporated in February 2005 and is engaged in business as a Medicare provider of home health services in Lake County, Indiana.

**ANSWER:**     Castor is without knowledge as to the allegations in rhetorical paragraph 40 and therefore denies same.

41.     Defendant Duncan has been American's President since it was incorporated. Defendant Duncan was a 50% shareholder of American from its inception until August 2008, when she became the 100% shareholder of American.

**ANSWER:**     Castor is without knowledge as to the allegations in rhetorical paragraph  41 and therefore denies same.

42.     Defendant Duncan is the sister of defendant Dr. Castor,

**ANSWER:**     Castor admits the allegations in rhetorical paragraph 42.

43.     Defendant Dr. Castor knowingly referred his patients to American to receive home health services in violation of the Stark Law and 42 C.F.R. § 424.22.

**ANSWER:**     Castor denies the allegations contained in rhetorical paragraph 43.

44.     From May 20, 2018 through January 18, 2014, defendant American knowingly submitted claims to Medicare for home health services for patients referred by defendant Dr. Castor in violation of the Stark Law and 42 C.F.R. § 424.22.

**ANSWER:**     Castor is without knowledge as to the allegations in rhetorical paragraph 44 and therefore denies same.

45.     From May 20, 2018 through January 18, 2014, defendant Duncan caused to be submitted to Medicare claims from defendant American for home health services for patients referred by defendant Dr. Castor in violation of the Stark Law and 42 C.F.R. § 424.22.

**ANSWER:**     Castor denies the allegations contained in rhetorical paragraph 46.

46.     Attached as Exhibit 1B and here incorporated by reference as if set out in full, is a list of claims paid by Medicare to American for defendant Dr. Castor's home health care referrals for the period from May 20, 2008 through January 18, 2014 (with patient names and other identifying information redacted pursuant to Fed. R. Civ. P. 52).

**ANSWER:**     Castor is without knowledge as to the allegations in rhetorical paragraph 46 and therefore denies same.

47.     During the relevant time period, Medicare paid approximately 318 claims totaling approximately $862,709.81 to American for defendant Dr. Castor's home health care referrals.

**ANSWER:**     Castor is without knowledge as to the allegations in rhetorical paragraph 47 and therefore denies same.

48.     Defendant Jacob Castor owned approximately 25% of American from May 2008 until August 2008.

**ANSWER:**     Castor is without knowledge as to the allegations in rhetorical paragraph 48 and therefore denies same.

49.     Defendant Jacob Castor is the brother of defendant Dr. Castor.

**ANSWER:**     Castor admits the allegations in rhetorical paragraph 49.

50.     From May 20, 2008 through August 21, 2008, during the relevant time period of his ownership in defendant American, defendant Jacob Castor knowingly caused to be submitted to Medicare claims from defendant American for home health services for patients referred by defendant Dr. Castor in violation of the Stark Law and 42 C.F.R. § 424.22.

**ANSWER:**     Castor denies the allegations in rhetorical paragraph 50.

51.     Attached as Exhibit 1C and here incorporated by reference as if set out in full, is a list of claims paid by Medicare to American for defendant Dr. Castor's home health care referrals during the period of defendant Jacob Castor's ownership interest in American from May 20, 2008 through August 21, 2008 (with patient names and other identifying information redacted pursuant to Fed. R. Civ. P. 5.2).

**ANSWER:**     Castor is without knowledge as to the allegations in rhetorical paragraph 48 and therefore denies same.

52.     From May 20, 2008 through August 21, 2008, during the relevant time period of defendant Jacob Castor's ownership interest in American, Medicare paid approximately 17 claims totaling approximately $41,494.52 to American for defendant Dr. Castor's home health care referrals.

**ANSWER:**     Castor is without knowledge as to the allegations in rhetorical paragraph 52 and therefore denies same.

### Adarna Home Health Care Services

53.     Adarna was incorporated in March 2004 and was engaged in business as a Medicare provider of home health services in Lake County, Indiana from at least July 22, 2008 through and at least January 13, 2014.

**ANSWER:**     Castor is without knowledge as to the allegations in rhetorical paragraph 53 and therefore denies same.

54.     From at least July 22, 2008 through at least January 13, 2014, Maria Cynthia Castor was Adarna;s Chief Executive officer and Owner.

**ANSWER:**    Castor is without knowledge as to the allegations in rhetorical  paragraph 54 and therefore denies same.

55.    Maria Cynthia Castor is the sister-in-law of defendant Dr. Castor and the wife of Zosimo Castor, one of the defendant Dr. Castor's brothers.

**ANSWER:**    Castor admits the allegations in rhetorical paragraph 55.

56.    Defendant Dr. Castor knowingly referred his patients to Adarna in violation of the Stark law to receive home health services.

**ANSWER:**    Castor denies the allegations in rhetorical paragraph 56.

57.    Adarna and Maria Cynthia Castor submitted claims to Medicare in violation of the Stark Law for home health services for patients referred by defendant Dr. Castor, from at least July 22, 2008 through at least January 13, 2014, in violation of the Stark Law and 42 C.F.R. § 424.22.

**ANSWER:**    Castor denies the allegations contained in rhetorical paragraph 57.

58.    Attached as Exhibit 1D and here incorporated as if set out in full, is a list of claims paid by Medicare to Adarna for defendant Dr. Castor's home health care referrals for the period from July 22, 2008 through January 13, 2014 (with patient names and other identifying information redacted pursuant to Fed. R. Civ. P. 5.2).

**ANSWER:**    Castor is without knowledge as to the allegations in rhetorical  paragraph 58 and therefore denies same.

59.    From July 22, 2008 through January 13, 2014, Medicare paid approximately 82 claims totaling approximately $211,308.46 to Adarna for defendant Dr. Castor's home health care referrals.

**ANSWER:**    Castor is without knowledge as to the allegations in rhetorical  paragraph 59 and therefore denies same.

**Amore Home Health Care Services, Inc.**

60.     Amore was engaged in business as a Medicare provider of home health services in Lake County, Indiana from March 14, 2011 through December 13, 2013.

**ANSWER:**     Castor is without knowledge as to the allegations in rhetorical  paragraph 60 and therefore denies same.

61.     From March 14, 2011 through December 31, 2013, Debbie J. Castor was the President and sole shareholder of Amore until she sold the business on December 31, 2013.

**ANSWER:**     Castor is without knowledge as to the allegations in rhetorical  paragraph 61 and therefore denies same.

62.     From March 14, 2011 through December 31, 2013, Debbie J. Castor was the sister-in-law of defendant Castor and the wife of Johnny Castor, one of defendant Dr. Castor's brothers.

**ANSWER:**     Castor admits the allegations in rhetorical paragraph 62.

63.     Defendant Dr. Castor knowingly referred his patients to Amore to receive home health services in violation of the Stark Law and 42 C.F.R. § 424.22.

**ANSWER:**     Castor denies the allegations in rhetorical paragraph 63.

64.     Amore and Debbie J. Astor submitted claims to Medicare for home health services for patients referred by defendant Dr. Castor in violation of the Stark Law and 42 C.F.R. § 424.22.

**ANSWER:**     Castor is without knowledge as to the allegations in rhetorical  paragraph 64 and therefore denies same.

65.     Attached as Exhibit 1E and here incorporated by reference as if set out in full, is a list of claims paid by Medicare to Amore for defendant Dr. Castor's home health care referrals for the period from March 14, 2011 through January 25, 2014 (with patient names and other identifying information redacted pursuant to Fed. R. Civ. P. 5.2).

**ANSWER:**     Castor is without knowledge as to the allegations in rhetorical  paragraph 65 and therefore denies same.

66.     From March 14, 2011 through January 25, 2014, Medicare paid approximately 72 claims totaling approximately $180,471.14 to Amore for defendant Dr. Castro's home health care referrals.

>    **ANSWER:**    Castor is without knowledge as to the allegations in rhetorical  paragraph 66 and therefore denies same.

## VIOLATIONS OF LAW
## COUNT I

67.     Plaintiff United States realleges paragraphs 1 through 66 above as if fully set forth.

>    **ANSWER:**    Castor realleges his answers to rhetorical paragraphs 1 through 66 of his answer as if fully set forth herein.

68.     Defendant Dr. Castor, knowingly presented, or caused to be presented, approximately 472 false or fraudulent claims to Medicare for defendant Dr. Castor's home health care referrals to defendant American, Adarna, and Amore.

>    **ANSWER:**    Castor denies the allegations in rhetorical paragraph 68.

69.     Defendant American, knowingly presented, or caused to be presented, approximately 318 false or fraudulent claims to Medicare for defendant Dr. Castor's home health care referrals to American.

>    **ANSWER:**    Castor is without knowledge as to the allegations in rhetorical  paragraph 69 and therefore denies same.

70.     Defendant Duncan, knowingly presented, or caused to be presented, approximately 318 false or fraudulent claims to Medicare from defendant American for defendant Dr. Castor's home health care referrals to American.

>    **ANSWER:**    Castor is without knowledge as to the allegations in rhetorical  paragraph 70 and therefore denies same.

71.     Defendant Jacob Castor, knowingly presented, or caused to be presented, approximately 17 false or fraudulent claims to Medicare from defendant American for defendant Dr. Castro's home health care referrals to American.

ANSWER:     Castor is without knowledge as to the allegations in rhetorical  paragraph 71 and therefore denies same.

72.     The false or fraudulent information in each claim was material to Medicare's decision to pay the false claims that defendant American, defendant Duncan, defendant Jacob Castor, Adarna, and Amore submitted to Medicare.

ANSWER:     Castor denies the allegations in rhetorical paragraph 72.

73.     Defendants Dr. Castor, American, Duncan, and Jacob Castor presented the false or fraudulent claims to Medicare, or caused the false or fraudulent claims to be presented to Medicare, with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

ANSWER:     Castor denies the allegations in rhetorical paragraph 73.

74.     Plaintiff United States sustained a loss from the false or fraudulent claims defendant American, defendant Duncan, defendant Jacob Castor, Adarna, and Amore submitted to Medicare.

ANSWER:     Castor denies the allegations in rhetorical paragraph 74.

75.     Defendants Dr. Castor, American, Duncan, and Jacob Castor are liable to plaintiff United States under the FCA, jointly and severally, for three times the loss sustained by plaintiff United States plus a civil penalty of not less than $5,500 and not more than $11,000 per false claim and the costs of this civil action brought to recover such penalty and damages, 31 U.S.C. § 3729(a)(1), (3). Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note: Public Law 101-410; 64 Fed. Reg. 47,099, 47,103 (1999)..

ANSWER:     Castor denies the allegations in rhetorical paragraph 75.

## COUNT 2

### False Claims Act: False Statements Material to False Claims
### (31 U.S.C. § 3729(a)(1)(B) )

76.     Plaintiff United States realleges paragraphs 1 through 75 above as if fully set forth.

**ANSWER:**   Castor realleges his answers to rhetorical paragraphs 1 through 75 of his answer as if fully set forth herein.

77.     Defendant Dr. Castor knowingly made, used, or caused to be made or used, false or fraudulent records or statements, including claims for payment or approval submitted to Medicare (identified in paragraphs 31-62 above) for DHS rendered to patients by an entity owned by the referring physician's immediate family members in violation of the Stark Law.

**ANSWER:**   Castor denies the allegations in rhetorical paragraph 77.

78.     Defendant American knowingly made, used, or caused to be made or used, false or fraudulent records or statements, including claims for payment or approval submitted to the United States (identified in paragraphs 31-48 above) for DHS rendered to patients by an entity owned by the referring physician's immediate family members in violation of the Stark Law.

**ANSWER:**   Castor is without knowledge as to the allegations in rhetorical  paragraph 78 and therefore denies same.

79.     Defendant Duncan knowingly made, used, or caused to be made or used, false or fraudulent records or statements, including claims for payment or approval submitted to the United States (identified in paragraphs 31-48 above) for DHS rendered to patients by an entity owned by the referring physician's immediate family members in violation of the Stark Law.

**ANSWER:**   Castor is without knowledge as to the allegations in rhetorical  paragraph 79 and therefore denies same.

80.     Defendant Jacob Castor knowingly made, used, or caused to be made or used, false or fraudulent records or statements, including claims for payment or approval submitted to the United States (identified in paragraphs 31-48 above) for DHS rendered to patients by an entity owned by the referring physician's immediate family members in violation of the Stark Law.

**ANSWER:**   Castor is without knowledge as to the allegations in rhetorical  paragraph 80 and therefore denies same.

81.     The false or fraudulent records or statements that defendants Dr. Castor, American, Duncan, and Jacob Castor made, used, or caused to be made or used were material to the decisions of Medicare to pay the false claims that those defendants submitted, or caused to be submitted, to Medicare.

**ANSWER:**     Castor denies the allegations in rhetorical paragraph 81.

82.     Defendants Dr. Castor, American, Duncan, and Jacob Castor made, used, or caused to be made or used, the false or fraudulent records or statements with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

**ANSWER:**     Castor denies the allegations in rhetorical paragraph 82.

83.     Plaintiff United States sustained a loss from the false or fraudulent claims to Medicare that defendants Dr. Castor, American, Duncan, and Jacob Castor caused to be submitted using false or fraudulent records or statements that defendants Dr. Castor, American, Duncan, and Jacob Castor made, used, or caused to be made or used.

**ANSWER:**     Castor denies the allegations in rhetorical paragraph 83.

84.     Defendants Dr. Castor, American, Duncan, and Jacob Castor are liable t the United States under the FCA, jointly and severally, for three times the loss sustained by the United States plus a civil penalty of not less than $5,500 and not more than $11,000 per false claim and the costs of this civil action brought to recover such penalty and damages. 31 U.S.C. § 3729(a)(1), (3). Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note; Public Law 101-410; 64 Fed. Reg. 47,099, 47,103 (1999).

**ANSWER:**     Castor denies the allegations in rhetorical paragraph 84.

## COUNT 3 (Defendants American, Duncan, and Jacob Castor)
### Payment by Mistake

85.     Plaintiff United States realleges paragraphs 1 through 84 above as if fully set forth.

**ANSWER:**     No answer is necessary because no claim is stated against Castor in Count 3.

86.     This is a claim for the recovery of monies paid by Medicare to defendants American, Duncan, and Jacob Castor because of mistaken understandings of fact.

**ANSWER:**     No answer is necessary because no claim is stated against Castor in Count 3.

87.     Defendants American, Duncan, and Jacob Castor were not entitled to receive payment from the United States for DHS furnished by an entity that had a "financial relationship" with the referring physician or an "immediate family member" of such physician as prohibited by the Stark Law.

**ANSWER:**     No answer is necessary because no claim is stated against Castor in Count 3.

88.     The United States paid defendants American, Duncan, and Jacob Castor for claims for DHS, specifically home health services, furnished by an entity that had a "financial relationship" with an "immediate family member" of the referring physician without knowledge of material facts, and under the mistaken belief that defendants American, Duncan, and Jacob Castor were entitled to receive payment for such claims.

**ANSWER:**     No answer is necessary because no claim is stated against Castor in Count 3.

89.     The United States' mistaken belief was material to its decision to pay claims for home health services submitted, or caused to be submitted, by defendants American, Duncan, and Jacob Castor.

**ANSWER:**     No answer is necessary because no claim is stated against Castor in Count 3.

90.     Plaintiff United States suffered losses as a result of the Medicare payments to defendants American, Duncan, and Jacob Castor based on a mistake of fact.

**ANSWER:**     No answer is necessary because no claim is stated against Castor in Count 3.

91.     Defendants American, Duncan, and Jacob Castor are liable to account and pay to plaintiff United States the payments that Medicare made in error to defendants American, Duncan, and Jacob Castor.

**ANSWER:**     No answer is necessary because no claim is stated against Castor in Count 3.


## Count 4 (Defendants American, Duncan, and Jacob Castor)

### Unjust Enrichment

92.     Plaintiff United States realleges paragraphs 1 through 91 above as if fully set forth.

**ANSEWR:**     No answer is necessary because no claim is stated against Castor in Count 4.


93.     This is a claim by plaintiff United States for recovery of monies by which defendants American, Duncan, and Jacob Castor were unjustly enriched.

**ANSWER:**     No answer is necessary because no claim is stated against Castor in Count 4.


94.     By obtaining Medicare funds, directly or indirectly, to which they were not entitled, defendants American, Duncan, and Jacob Castor were unjustly enriched.

**ANSWER:**     No answer is necessary because no claim is stated against Castor in Count 4.


95.     Plaintiff United States suffered losses because of the unjust enrichment of defendants American, Duncan, and Jacob Castor.

**ANSWER:**     No answer is necessary because no claim is stated against Castor in Count 4.


96.     Defendants American, Duncan, and Jacob Castor are liable to account and pay to plaintiff United States the amounts defendants America, Duncan, and Jacob Castor received from Medicare to which they were not entitled.

**ANSWER:**     No answer is necessary because no claim is stated against Castor in Count 4.

WHEREFORE, Defendant, Conrado Castor, M.D., by counsel, prays that Plaintiff take nothing by its Complaint, for costs of this action, and for all other just and proper relief in the premises.

## JURY DEMAND

Defendant, Conrado Castor, M.D., by counsel, requests trial by jury herein.

## <u>AFFIRMATIVE DEFENSES</u>

Defendant, Conrado Castor, M.D., for his Affirmative Defenses to the Plaintiff's Complaint, states:

1.     That the Complaint fails to state a claim upon which relief can be granted.

2.     That if it should be deemed that Defendant has failed to answer any allegations contained in the Plaintiff's Complaint, Defendant hereby denies said allegation.

3.     The claims of Plaintiff against Defendant, Dr. Conrado Castor, are barred by the statute of limitations.

4.     Any and all home healthcare services performed by Defendant American Home Health Services, Inc., Adarna Home Health Care Services, Inc. and Amore Home Health Care Services, Inc., their agents and employees were medically necessary.

5.     The referrals in question were not made by Dr. Conrado Castor in all instances and he therefore should not be liable to Plaintiff for those referrals..

6.     Defendant reserves the right to add any additional affirmative defenses which become known to him in the future,

WHEREFORE, Defendant, Conrado Castor, M.D., respectfully requests that Plaintiff take nothing by way of its Complaint, for costs of this action, and for all other just and proper relief in the premises.

Respectfully submitted,

BURKE COSTANZA & CARBERRY LLP
Attorneys for Defendant,
Conrado Castor, M.D.


By: /s/Kevin E. Steele_____
      Kevin E. Steele, #17567-53
      156 S. Washington Street
      Valparaiso, IN 46383
      PH: (219) 531-0134
      steele@bcclegal.com


## CERTIFICATE OF SERVICE

      I hereby certify that on March 5, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Wayne T. Ault
Assistant United States Attorneys
Northern District of Indiana
5400 Federal Plaza, Suite 1500
Hammond, IN 46320
PH: (219) 937-5500
Wayne.Ault@usdoj.gov

Fred W. Grady
Fred W. Grady, P.C.
Harris Bank Building – Suite One
750 S. Washington Street
Valparaiso, IN 46383
fwgpclaw@gmail.com

By: /s/Kevin E. Steele_____
      Kevin E. Steele, #17567-53